Opinion issued March 18, 2004
     











In The
Court of Appeals
For The
First District of Texas




NO. 01-03-00074-CV




DENNIS AND MICHELLE WILLIAMS, Appellants

V.

ANNIE BRISCOE AND LINDA HARDRICK D/B/A HARDRICK &
ASSOCIATES, Appellees




On Appeal from the 55th District Court
Harris County, Texas
Trial Court Cause No. 2000-60122




O P I N I O N
          This is an appeal of a judgment notwithstanding the verdict (JNOV) rendered
in favor of defendants/appellees, Annie Briscoe and Linda Hardrick d/b/a Hardrick
& Associates, after a jury awarded plaintiffs/appellants, Dennis and Michelle
Williams, $265,000 in damages for legal malpractice based on the alleged
mishandling of an underlying negligence suit against a dialysis clinic.
          In four issues, appellants contend that the trial court erred in rendering the
JNOV because there was more than a scintilla of evidence demonstrating that (1) a
judgment in the underlying case would have been recoverable and collectible; (2) the
dialysis clinic was negligent; (3) damages resulted from the negligence; and (4) the
evidence justified the award of exemplary damages.
          Because appellants failed to establish that they would have prevailed in the
underlying medical negligence cause of action—a necessary prerequisite to prevailing
in the legal malpractice suit—we affirm.
Factual & Procedural Background
          Before his death in 2001 during the pendency of this suit, Dennis Williams was
morbidly obese, partially blind, and in end-stage renal failure resulting from insulin-dependent diabetes. Three times a week, he underwent dialysis at the Gambro North
dialysis clinic in Houston. In September 1995, Williams stepped on a piece of glass
that punctured his foot. It appears from the record that the clinic disinfected the
wound, bandaged it, and instructed Williams to apply bacitracin, a topical antibiotic. 
Michelle Williams testified that the dialysis clinic personnel periodically asked about
the condition of the wound over the next few weeks, but apparently did not re-treat
Williams’s foot, inject him with antibiotics, or supply a prescription for oral
antibiotics.


 
          On October 11, 1995, Williams consulted with his podiatrist, Dr. Gary Lepow.
Lepow’s notes from his examination indicate that Williams was suffering from a
“grade 1 approaching grade 2 ulceration” on his left foot. Williams informed Lepow
that the dialysis clinic was recommending an unspecified “invasive procedure” to
treat the foot wound. Lepow ordered home health wound care and indicated he
intended to discuss administration of antibiotics with Williams’ dialysis physician.
Although Williams was instructed to return to see Lepow in a week, he did not keep
the appointment. Approximately 10 days later, Williams was admitted to Hermann
Hospital for emergency treatment of the wound. Because the foot was gangrenous,
the doctors determined that it was necessary to amputate most of Williams’s left leg. 
Williams also underwent hyperbaric treatment that was intended to speed healing of
the surgical wound, but that had the side-effect of seriously impairing Williams’s
hearing.
          In 1997, appellants hired Briscoe to sue for damages. Briscoe brought a
medical malpractice action against Hermann Hospital under article 4590i of the
former Texas Medical Liability and Insurance Improvement Act.


 In adherence to the
prerequisites of article 4590i, Briscoe provided the hospital records to Dr. Robert
Hodgell to obtain his expert evaluation. In his report, Hodgell essentially cleared
Hermann Hospital and its physicians of any medical error. Hodgell did not have
records to review from the dialysis clinic or other treating doctors/nurses/home health
aides, but noted in pertinent part as follows:
I do have some serious concerns about the instructions given him,
regarding the proper care of injuries in an insulin dependent diabetic. 
Therefore, I would recommend looking at the management of the patient
prior to hospitalization . . . . Furthermore, the treatment at 1.5 weeks
prior to hospitalization, which consisted of only a topical bacterial
ointment, is totally inadequate therapy in an insulin dependent diabetic. 
In addition, at that time, the patient may have already shown signs of
cellulitis and probably should have been referred to a surgeon. 
Furthermore, the hemodialysis unit caring for the patient during the 3
months prior to hospitalization, may also have ignored symptoms of the
foot injury which probably would have been evident during his 3 times
a week hemodialysis. The left foot was probably bandaged and was
apparently not properly examined or evaluated by hemodialysis
personnel. Therefore, if anyone is responsible for the events that
resulted in the ultimate loss of hearing, it is the medical personnel who
cared for the patient prior to admission to the hospital.

          Briscoe also obtained a second expert report in 1999 from Dr. Jeffrey Stone of
Wound Care Consultants. It is not clear from the letter (or elsewhere in the record)
precisely what documents Stone reviewed, and the letter is very brief, but Stone
informed Briscoe, “I have reviewed the case at length and have found that they [sic]
met the standard of care in their treatment and concern.”



          These expert reports notwithstanding, Briscoe filed an article 4590i suit against
Hermann Hospital and some of its in-house physicians, but she did not name the
dialysis clinic or any of its personnel in the suit. Briscoe did not file a medical
negligence suit against any of the parties. This fact was significant because the article
4590i medical malpractice suit was dismissed for want of an adequate expert report. 
Providing an expert report in advance of litigation is not a procedural step required
in a medical negligence action; therefore, lack of an adequate expert report would not
have been a reason to dismiss such an action. 
          In the instant case, Katherine Youngblood, an attorney who specializes in
health care claims defense, testified that, because a dialysis clinic is not enumerated
in the statute, a medical negligence cause of action should have been brought against
the clinic rather than an article 4590i cause of action.


 Accordingly, appellants’ suit
for legal malpractice was based on Briscoe’s failure to file a negligence action against
the dialysis clinic, not on the dismissal of the article 4590i suit. 
          Before charging the jury, the trial court dismissed the article 4590i claims
against Hermann Hospital and its staff, and it dismissed Hardrick from this suit.


 The
only issue remaining for the jury to determine was whether Briscoe committed legal
malpractice by not pursuing a medical negligence claim against the dialysis clinic. 
The jury determined that Williams would have recovered on the original claim against
the dialysis clinic had the claim been properly prosecuted and awarded him $50,000
in damages. The jury also awarded Michelle Williams $15,000 in damages and
$200,000 in exemplary damages.
          Briscoe’s motions for summary judgment, directed verdict, and JNOV were all
based on the same grounds—appellants would have been successful in the underlying
medical negligence suit against the dialysis clinic because there was no evidence of
negligence, no evidence of recoverable, collectible damages, and no evidence of
malice. The trial court granted the JNOV without specifying the basis for its ruling.
Standard of Review
          A trial court may disregard a jury’s verdict and render a JNOV if there is no
evidence to support the jury’s findings or if a directed verdict would have been
proper. Brown v. Bank of Galveston, 963 S.W.2d 511, 513 (Tex. 1998). To
determine whether the trial court erred in rendering a JNOV, we consider only the
evidence and reasonable inferences that support the jury’s answers. Best v. Ryan Auto
Group, Inc., 786 S.W.2d 670, 671 (Tex. 1990). In other words, we view the evidence
in the light most favorable to the verdict. See Weirich v. Weirich, 833 S.W.2d 942,
945 (Tex. 1992). If there is more than a scintilla of competent evidence to support
the jury’s findings, this Court should reverse the JNOV. Old Republic Ins. Co. v. EX-IM Services Corp., 920 S.W.2d 393, 396 (Tex. App.—Houston [1st Dist.] 1996, no
writ). When the evidence supporting the finding, as a whole, rises to a level that
would enable reasonable and fair-minded people to differ in their conclusions, the
evidence comprises more than a scintilla. See Burroughs Wellcome Co. v. Crye, 907
S.W.2d 497, 499 (Tex. 1995).
Analysis
          To recover on a claim for legal malpractice, a plaintiff must prove that the
attorney (1) owed the plaintiff a duty; (2) the attorney breached that duty; (3) the
breach proximately caused plaintiff’s injuries; and (4) the plaintiff was damaged. 
Greathouse v. McConnell, 982 S.W.2d 165, 172 (Tex. App.—Houston [1st Dist.]
1998, pet. denied). When a legal malpractice claim arises from earlier litigation, the
plaintiff also bears the burden to prove he would have prevailed on the underlying
cause of action. Id.; Jackson v. Urban, Coolidge, Pennington & Scott, 516 S.W.2d
948, 949 (Tex. Civ. App.—Houston [1st Dist.] 1974, writ ref’d n.r.e.). In addition,
a plaintiff must prove the amount of damages he would have recovered and collected
in the underlying case if it had been properly prosecuted. Cosgrove v. Grimes, 774
S.W.2d 662, 666 (Tex. 1989). Evidence that damages could have been collected is
required because, even if an attorney’s negligence prevented the entry of a judgment
in the client’s favor, the client suffered no damage unless he could have collected
some part of that judgment. Vanasek v. Underkofler, 50 S.W.3d 1, 8 (Tex.
App.—Dallas 1999) rev’d in part on other grounds, 53 S.W.3d 343 (Tex. 2001). 
This aspect of plaintiff’s burden is commonly referred to as the “suit within a suit”
requirement. Greathouse, 982 S.W.2d at 173. Thus, to prove that Briscoe committed
legal malpractice, appellants had to prove that she failed to bring a medical
negligence claim against the dialysis clinic, that the medical negligence claim would
have been successful, that it would have resulted in damages, and that those damages
would have been collectible.
          In her motion for JNOV, Briscoe addressed the “suit within a suit” burden and
contended there was no evidence to show that the underlying suit for medical
malpractice would have been successful; that being so, appellants could not establish
their legal malpractice claim, and JNOV was appropriate. To prevail on the
underlying medical negligence claim, i.e., the suit within the suit, the appellants had
to prove four elements: (1) the dialysis clinic’s duty to act according to a certain
medical standard; (2) the clinic’s breach of the applicable standard of care; (3) an
injury; and (4) a causal connection between the breach of the standard of care and the
injury. See Day v. Harkins & Munoz, 961 S.W.2d 278, 280 (Tex. App.—Houston [1st
Dist.] 1997, no writ). Briscoe argued that none of the elements of medical negligence
by the dialysis clinic were established by the evidence presented by appellants at trial. 
She also argued that there was no evidence to show that the clinic was solvent and no
evidence to show that damages resulting from a successful negligence suit against the
clinic would have been recoverable and collectible, as required to establish legal
malpractice. Thus, appellants did not show that Briscoe had a duty to bring a medical
negligence claim against the clinic or that they were harmed by her failure to do so. 
Finally, Briscoe argued that there was no evidence to show that she acted with malice,
as necessary to support an award of exemplary damages. 
          Because the trial court did not state the grounds for its JNOV ruling, appellants
have challenged each of Briscoe’s contentions, arguing in four issues for review that
there was more than a scintilla of evidence to negate each of the grounds upon which
the JNOV could have been granted. See Fort Bend County Drainage Dist. v.
Sbrusch, 818 S.W.2d 392, 394 (Tex. 1991) (noting that appellant must challenge all
grounds in motion if JNOV does not state ground). Appellants argue that they
adduced evidence sufficient to support the jury’s findings because Youngblood’s
testimony established that Briscoe mismanaged the negligence claim, that the claim
did not need to be brought under article 4590i, that the value of the claim was
between $100,000 and $500,000, and that, had Youngblood been defending the
dialysis clinic, she would have advised them that there was at least an 80% chance of
its being found liable. Appellants conclude that the jury reasonably inferred from this
testimony that the dialysis clinic would have been found liable and would have had
to pay damages. Appellants also argue that there was sufficient evidence to support
the jury finding that a judgment in the medical negligence suit would have been
collectible because they showed that the dialysis clinic was settling claims during the
relevant time period and that the clinic remained in business for the next six years;
thus it was clearly solvent and had sufficient assets from which they could have
recovered. Briscoe reiterates on appeal her contention that this evidence amounted,
in essence, to no evidence at all to show that appellants would have won the
underlying suit for medical negligence. We agree. 
          To prove their legal malpractice claim, appellants were required to show that,
but for Briscoe’s legal malpractice, they would have recovered on their medical
negligence claim against the dialysis clinic, i.e., they were first required to shoulder
the burden of providing competent evidence in regard to each element of medical
negligence—duty, breach, injury, and proximate cause—thereby showing that they
would have prevailed on the “suit within the suit.” In other words, appellants were
required to present enough evidence from which a jury could have found that (1) the
clinic had the duty to act according to a certain medical standard; (2) the clinic
breached the applicable standard of care; (3) Williams was injured; and (4) there was
a causal connection between the clinic’s breach of the standard of care and Williams’s
injury. See Day, 961 S.W.2d at 280. 
          In determining whether appellants produced sufficient evidence with respect
to their “suit within the suit” to withstand the JNOV, we consider only the evidence
favorable to the jury’s findings, which consists of Hodgell’s expert report and
Youngblood’s testimony. Hodgell’s report indicates that Hodgell had serious
concerns about Williams’ care and the instructions given him before he went into the
hospital. In the report, Hodgell states that treatment at 1.5 weeks prior to
hospitalization consisting only of a topical bacterial ointment was “totally inadequate
therapy in an insulin-dependent diabetic.” He further states that “at that time the
patient may have already shown signs of cellulitis and probably should have been
referred to a surgeon” and that “the hemodialysis unit caring for the patient during the
3 months prior to hospitalization, may also have ignored symptoms of the foot injury
which probably would have been evident during his 3 times a week hemodialysis.” 
(Emphasis added.) However, nothing in the report specifies a standard of care for the
clinic, states how the clinic breached that standard of care, or identifies the causal
connection between the clinic’s breach of duty and Williams’s injury. At best,
Hodgell’s report indicates that the care accorded Williams by the clinic and its effect
on his condition were questions to be explored. Hodgell’s report, therefore, creates
no more than a surmise of negligence by the clinic.
          Youngblood testified on the type of suit Briscoe should have brought against
a negligent dialysis clinic and said that, had she been defending against such a suit,
she would have advised the clinic that it had an 80% chance of being found liable. 
She testified to this, however, as a legal expert, not a medical expert. Youngblood
did not review any of the medical records, did not speak directly with appellants, 
obtained all of the information about Williams’s injury solely from appellants’
counsel, and did not consult a medical expert regarding the standard of care or how
the clinic breached that standard. The record indicates that Youngblood simply
assumed the clinic was negligent and based her conclusions solely on that
assumption, without providing the clinic records, identifying the proper standard of
care, or offering evidence showing who breached the standard, and how. The clinic
may have been negligent. Nevertheless, Youngblood’s evidence, like Hodgell’s, does
not establish the necessary elements of medical negligence. Aside from Hodgell’s
report and Youngblood’s testimony, there is no other evidence in the record
concerning these elements that is favorable to the jury’s findings.
          We hold that appellants did not raise more than of a scintilla of evidence to
prove they would have prevailed in the medical negligence suit against the dialysis
clinic. Accordingly, they failed to establish that Briscoe committed legal malpractice
by failing to bring a medical negligence claim against the clinic. We overrule issues
one and two presented for review. Given this holding, we need not determine
whether any damages would have been collectible against the clinic or whether
appellants showed that Briscoe acted with malice, justifying an award of exemplary
damages; accordingly, we decline to address issues three and four.
          We affirm the trial court’s judgment.
 
 
                                                             Evelyn V. Keyes
                                                             Justice


Panel consists of Justices Nuchia, Jennings, and Keyes.