# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-05-00173-CV

**Appellant, World Access Telecommunications Group, Inc.//Cross-Appellants, Statewide Calling, Inc. d/b/a Community Services; Statewide LJR; Statewide Bulverde; Statewide McAllen; and Mike Fine**

**v.**

**Appellees, Statewide Calling, Inc. d/b/a Community Services; Statewide LJR; Statewide Bulverde; Statewide McAllen; and Mike Fine//Cross-Appellee, World Access Telecommunications Group, Inc.**

## FROM THE DISTRICT COURT OF COMAL COUNTY, 274TH JUDICIAL DISTRICT NO. C2002-729-C, HONORABLE CHARLES R. RAMSAY, JUDGE PRESIDING

## MEMORANDUM OPINION

World Access Telecommunications Group, Inc. (World Access) sued Statewide Calling, Inc. d/b/a Community Services; Statewide LJR; Statewide Bulverde; Statewide McAllen; and Mike Fine (collectively, Statewide) for breach of contract based on Statewide's failure to pay for long distance telephone services. In defense, Statewide asserted that its failure to pay for the telephone services was excused by World Access's prior material breach of their agreement. The jury found that Statewide breached its agreement with World Access but also found that Statewide's breach was excused due to World Access's prior material breach. In addition, the jury found that Statewide did not incur any damages as a result of World Access's material breach. Statewide filed a motion to enter judgment on the jury's verdict. World Access filed a motion for judgment notwithstanding the verdict (JNOV) requesting the district court to disregard the jury's finding that

Statewide's breach was excused and enter judgment on the jury's remaining findings. Tex. R. Civ. P. 301. If the district court granted World Access's motion for JNOV, Statewide requested that it grant its motion for JNOV and disregard the jury's finding that it suffered no damages as a result of World Access's alleged material breach. Statewide insisted that any award to World Access must be offset by the damages Statewide suffered when World Access terminated Statewide's telephone services before the end of the contract. The district court impliedly denied World Access's motion for JNOV when it rendered a take-nothing judgment on the jury's verdict.

On appeal, World Access contends that the district court erred in refusing to disregard the jury's finding that Statewide's failure to pay for telephone services it received in 2001 was excused by World Access's prior material breach. Statewide brings a contingent cross-appeal requesting that if we reverse the district court's take-nothing judgment, we review the denial of Statewide's motion for JNOV, disregard the jury's finding that Statewide suffered no damages, and offset its damages against World Access's award. Because we find that the district court erred in impliedly denying World Access's motion for JNOV, we will reverse the district court's judgment and render judgment in favor of World Access. In addition, we hold that Statewide is not entitled to any damages under its agreement with World Access that would offset World Access's award.

**BACKGROUND**

Statewide and Telcom Productions, Inc. (Telcom), are telemarketing companies that conduct fundraising campaigns on behalf of law enforcement organizations. In September 1998 Bruce Yablonsky, a regional manager for Telcom, entered into a written contract to purchase long

2

distance telephone service from World Access[1] at a wholesale rate of 4.5 cents per minute for one

year. The portions of the World Access/Telcom agreement that are relevant to this appeal provide:

> 2.     This Agreement shall be extended, on the same terms and conditions, for an additional period of one (1) year unless either party notifies the other party in writing not less than sixty (60) days prior to the termination date of its desire to terminate this Agreement.

> 4.     [World Access] shall give [Telcom] at least five (05) days' notification in the event any service rate changes.

> 5.     [Telcom] hereby acknowledges that [World Access's] charges for its provision of its telecommunication services will be billed on a monthly basis and that payment for such services is due and payable ten (10) days from the invoice date.

> 6.     Should [Telcom] dispute any of the charges on its weekly invoice, it shall notify [World Access] of the disputed charges not later than ten (10) days from the date of invoice. Said dispute shall set forth in writing all details concerning the disputed charges. In the event of a dispute, [Telcom] shall pay the undisputed amount in accordance with the payment terms set forth herein. . . . [World Access] reserves the right to terminate service if [Telcom] becomes (3) days past due.

> 9.     Neither [World Access] nor [Telcom] shall be liable to the other for any consequential, indirect, special or incidental damages whatsoever, including, without limitation, any loss of revenue, goodwill, or profits or claims by third parties or otherwise in connection with or related to any of the services provided pursuant to this Agreement.

> 15.     Should it be necessary for either party to this Agreement to retain the services of an attorney to enforce its right under this Agreement, and should any suit be necessary to enforce said rights, then the prevailing party shall be entitled to receive reasonable attorney's fees from the other party.

---

[1] At that time World Access was known as Comm/Net Services Corp.

Mike Fine, the president of Statewide, had previously worked for Telcom and was a friend of Yablonsky. In late 1998 or early 1999, Fine called James Quail, a sales representative for World Access. Fine told Quail that he was also a telemarketer, that he had spoken with Yablonsky, and that Yablonsky had told him that he had "signed a contract for four-and-a-half cents" a minute. Fine then asked Quail if Statewide could have "the same deal" as Telcom. Quail, on behalf of World Access, orally agreed to Fine's request; however, the parties never entered into a written agreement. Statewide continued to use long distance telephone service from World Access until May 2001 under the belief that it was purchasing service pursuant to the oral agreement that reflected the same terms as the World Access/Telcom agreement. At some point before January 2001, World Access lowered Statewide's rate to 3.25 cents per minute.

In January 2001, World Access moved its billing operations to California and created a new customer file for Statewide. During this process, Statewide was left off the list of wholesale customers and was misidentified as a retail customer with a billing rate of approximately 8 cents per minute. To add to the confusion, World Access failed to send Statewide invoices in January, February, and March of 2001, so the changed rate went undetected. Statewide did not file a written complaint concerning the missing invoices, but it continued to make calls during these months. Although the record includes invoices for April and May 2001, Fine testified that these were not received until after this suit was filed.

In April 2001, World Access was forced into bankruptcy and was compelled to shut down several of its telephone circuits. World Access requested that these circuits be turned off on May 14, but telephone service terminated earlier on May 8. World Access did not notify any of its

4

customers, including Statewide, that their service would be terminated. According to World Access's records, Statewide had limited or no service between May 8 and May 10. Fine testified that Statewide's records showed that its telephone services were shut down between May 8 and May 22. At the end of May, Statewide transferred all of its telephone services to a new provider.

In June 2001, Katherine Johnson LeVesque was placed in charge of collections on accounts receivable for World Access. LeVesque testified that, in late April and again in early May, World Access generated invoices for telephone services provided to Statewide between January and May 2001. She testified further that it was World Access's routine practice to send out the invoices at or near the time that they were created. She also noted that there was no record that either the April or May invoices had been returned or that Statewide disputed the charges.

On June 6, LeVesque personally sent invoices to Statewide reflecting the charges incurred from January through May 2001. Again, Statewide did not respond. In July, LeVesque called Statewide and asked to speak to the party in charge of accounts payable. Mike Lopez informed her that she needed to speak to Mike Fine and indicated that Fine would return her call. According to LeVesque, Fine returned her call and asked her to send the invoices to Statewide's post office box; LeVesque testified that she express-mailed the invoices to the post office box. The invoices were never picked up and were returned unopened two weeks later. LeVesque testified that she called Fine and that this time he told her to eFax[2] the invoices to him. She stated that she did so but did not hear from Fine or anyone else at Statewide. She attempted to call Fine after this but

---

[2] An eFax is an internet service that allows users to send and receive faxes as e-mail attachments.

was unable to contact him. Fine contradicted LeVesque's story, testifying that he never spoke to her before the pretrial depositions. Fine stated further that he believed that LeVesque spoke only to Mike Lopez.

In August 2002, World Access sued Statewide for breach of contract stemming from Statewide's failure to pay for the 2001 telephone services. World Access claimed that Statewide had an outstanding balance of $198,182.09. LeVesque testified that World Access became aware of potential billing irregularities during the discovery period. Specifically, Statewide claimed that the allegedly unpaid invoices, which were the basis of World Access's suit, established that Statewide was double-billed for calls made in December 2000 and that World Access had incorrectly billed Statewide's calls at 8 cents per minute. After verifying these claims, World Access removed all double-billing; recalculated the applicable charges at the correct rate, 3.25 cents per minute; and lowered its demand to $64,462.76.

At trial, World Access argued that Statewide's failure to pay for services it had received constituted a breach of contract. Statewide countered that World Access itself had materially breached the contract by failing to (1) charge the agreed upon rate for telephone services, (2) provide service through September 2001 (the term of their contract), (3) provide notice before terminating telephone service in May 2001, (4) provide monthly invoices, and (5) provide notice of rate increases. Statewide insisted that its obligation to pay for the telephone services it had previously received was excused by World Access's prior material breaches. In the alternative, Statewide argued that any money found to be owed to World Access should be offset by Statewide's

6

lost profits and consequential damages resulting from the improper termination of its telephone services in May 2001.

The jury found that Statewide failed to comply with its oral agreement to pay for telephone services provided and that it owed World Access $64,462.76. The jury also found that $15,000 would reasonably compensate World Access for its attorney's fees. However, the jury additionally found that Statewide's failure to pay was excused because "World Access failed to comply with a material obligation of the Agreement first." Finally, when asked, "What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Statewide . . . for its damages, if any, that resulted from [World Access's] failure to comply," the jury answered "$0.00."

World Access filed a motion for JNOV. *See* Tex. R. Civ. P. 301. In the motion, World Access averred that there was no legally or factually sufficient evidence to support the jury's finding that Statewide's failure to pay was excused due to World Access's prior breach of a material obligation of the agreement. Consequently, World Access claimed that the district court should disregard that finding, enter judgment in its favor on the remaining findings, and award it $64,462.76 plus $15,000 for its attorney's fees. Statewide filed a motion asking the district court to enter a take-nothing judgment on World Access's claims based on the jury's verdict. Alternatively, if the district court refused to enter a take-nothing judgment, Statewide moved for JNOV as to the jury's finding that Statewide incurred "$0.00" in damages. Statewide argued that it conclusively established that it incurred damages totaling at least $61,515 as a result of World Access's material breaches of their agreement. Accordingly, Statewide suggested that the district court disregard the jury's finding that it suffered no damages and offset any award to World Access by $61,515.

7

Ultimately, the district court impliedly overruled World Access's motion for JNOV, entered a take-nothing judgment in accordance with the jury's verdict, and ordered "that all costs of court expended or incurred in this cause be paid by the party incurring such cost." This appeal followed.

## STANDARD OF REVIEW

A motion for JNOV should be granted when the evidence is conclusive and one party is entitled to recover as a matter of law or when a legal principle precludes recovery. *Mancorp, Inc. v. Culpepper*, 802 S.W.2d 226, 227 (Tex. 1990). A trial court may disregard a jury's verdict and render judgment notwithstanding the verdict if no evidence supports the jury's findings or if a directed verdict would have been proper. *See Tiller v. McLure*, 121 S.W.3d 709, 713 (Tex. 2003); *Brown v. Bank of Galveston*, 963 S.W.2d 511, 513 (Tex. 1998); *Williams v. Briscoe*, 137 S.W.3d 120, 124 (Tex. App.—Houston [1st Dist.] 2004, no pet.). To determine whether the trial court erred in rendering judgment notwithstanding the verdict, we consider only the evidence and reasonable inferences from that evidence that tend to support the jury's answers. *See Tiller*, 121 S.W.3d at 713; *Williams*, 137 S.W.3d at 124. In other words, we view the evidence in the light most favorable to the verdict under the well-settled standards that govern "no evidence," *i.e.*, legal-sufficiency review. *See Wal-Mart Stores, Inc. v. Miller*, 102 S.W.3d 706, 709 (Tex. 1992); *Williams*, 137 S.W.3d at 124. In reviewing the legal sufficiency of the evidence, we view the evidence in the light favorable to the verdict, crediting favorable evidence if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 807 (Tex. 2005).

8

A no-evidence challenge is proper when the rules of law or evidence preclude giving weight to the only evidence offered to prove a vital fact. *See Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997). If the controlling law permits the vital fact and if more than a scintilla of competent evidence supports the jury's findings, this Court will reverse the judgment notwithstanding the verdict. *See Miller*, 102 S.W.3d at 709; *Williams*, 137 S.W.3d at 124. More than a scintilla arises when the evidence supporting the finding, as a whole, rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *See Williams*, 137 S.W.3d at 124 (citing *Burroughs Wellcome Co. v. Crye*, 907 S.W.2d 497, 499 (Tex. 1995)). Evidence that gives rise only to mere surmise or suspicion of the existence of a vital, material factual element is not more than a scintilla and, therefore, is no evidence of the vital, material factual element to be inferred. *See Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004).

**DISCUSSION**

**World Access's motion for JNOV**

World Access insists that the district court improperly denied its motion for JNOV requesting the district court to disregard the jury's finding that World Access's earlier material breach of the contract excused Statewide's failure to pay for telephone services it received in 2001. World Access claims that the district court should have disregarded this finding because (1) it is based on Statewide's allegation that World Access breached contract provisions found in the World Access/Telcom agreement, rather than these parties' oral agreement; (2) prior material breach is not a defense to every breach of contract claim; (3) the contract terms allegedly breached by World

9

Access were not mutually dependent on Statewide's obligation to pay for services already used; and (4) its alleged breaches were not material.

### *Agreement between World Access and Statewide*

At trial, World Access argued that the only agreement it had with Statewide was to provide Statewide long distance telephone services at a rate of 4.5 cents per minute. Statewide maintained, to the contrary, that its oral agreement with World Access incorporated the provisions found in the World Access/Telcom written agreement. The jury did not make an explicit finding that the terms of the World Access/Telcom agreement were incorporated into the oral agreement between World Access and Statewide. The jury did find that Statewide's failure to comply with its agreement with World Access was excused due to World Access's prior material breach of their agreement. And all of Statewide's material breach allegations were predicated on provisions found in the World Access/Telcom agreement. Thus, we must assume that the jury impliedly found that the terms of the written agreement were incorporated into the oral agreement between World Access and Statewide. *See City of Keller*, 168 S.W.3d at 819 (stating that when parties to oral contract testify to conflicting terms, viewing evidence in light favorable to verdict requires reviewing court to presume terms were those asserted by prevailing party).

On appeal, World Access contends that there is no evidence from which a reasonable juror could have determined that the provisions of the World Access/Telcom agreement were incorporated into its oral agreement with Statewide. Accordingly, World Access insists that the provisions of its written agreement with Telcom cannot serve as the basis for the jury's finding that Statewide's failure to pay for its telephone services was excused.

10

We hold that the record contains more than a scintilla of evidence indicating that both World Access and Statewide operated as if the terms of the World Access/Telcom agreement had been incorporated into their agreement. LeVesque testified that she believed that Statewide was entitled to notice before a termination or a rate change. These notice provisions were found in the World Access/Telcom agreement. Likewise, Bobby Vanoy, World Access's Vice President of Operations, stated in an internal e-mail, "We cannot shut these commercial customers down until they have proper notice of disconnect for non-payment or simply notice of no longer providing services." In addition, the jury heard Fine's testimony that he asked Quail, World Access's sales representative, if Statewide could have "the same deal" as Telcom and that Quail responded "[d]efinitely." Viewing this evidence in the light favorable to the verdict, crediting all favorable evidence that reasonable jurors could believe and disregarding all contrary evidence except that which they could not ignore, we hold that legally sufficient evidence supports the jury's implied finding that the terms of the World Access/Telcom agreement were incorporated into the oral agreement between World Access and Statewide. *See id.* Therefore, the notice provisions found in the World Access/Telcom agreement could have been breached by World Access, and this could be the breach that the jury found excused Statewide's obligation to pay for the telephone services it received.

### Prior material breach

Even if the terms of World Access/Telcom agreement apply to these parties, World Access claims that there is no evidence to support the jury's finding of a prior material breach sufficient to excuse Statewide's obligation to pay for services it had already received. "It is a

11

fundamental principle of contract law that when one party to a contract commits a material breach of that contract, the other party is discharged or excused from further performance." *Mustang Pipeline Co. v. Driver Pipeline Co.*, 134 S.W.3d 195, 196 (Tex. 2004) (per curiam). The non-breaching party must elect between two courses of action, either continuing performance or ceasing performance. *Gupta v. Eastern Idaho Tumor Inst., Inc.*, 140 S.W.3d 747, 756 (Tex. App.—Houston [14th Dist.] 2004, pet. denied). If the non-breaching party elects to treat the contract as continuing and insists the party in default continue its performance, the previous breach constitutes no excuse for nonperformance on the part of the party not in default, and the contract continues in force for the benefit of both parties. *Hanks v. GAB Bus. Servs., Inc.*, 644 S.W.2d 707, 708 (Tex. 1982); *Gupta*, 140 S.W.3d at 756.

Statewide first alleged that World Access materially breached by failing to charge the agreed upon rate for telephone services provided and by failing to provide notice of the alleged rate increase. It is undisputed that when World Access moved its billing operations to California in January 2001, it designated Statewide as a retail rather than a wholesale customer and assigned it the incorrect billing rate of approximately 8 cents per minute. World Access admitted that when it filed suit it was unaware of this billing error. Once it was notified of this error and other billing irregularities, World Access recalculated Statewide's bills at the wholesale rate of 3.25 cents per minute and lowered its demand to $64,462.76. There is no evidence in the record that World Access intentionally raised Statewide's rates in January 2001. Therefore, we hold that there is no evidence from which a rational jury could conclude that World Access materially breached the agreement by

failing to charge Statewide the agreed upon rate or by failing to provide Statewide notice of a rate increase.

Statewide also alleged that World Access materially breached their agreement by failing to provide monthly invoices after January 2001. It is uncontested that Statewide continued to use the telephone services provided by World Access despite the absence of monthly invoices. Therefore, even if World Access's failure to send monthly invoices did constitute a breach of the agreement, it cannot serve as the basis for the jury's finding that Statewide's failure to pay for services it continued to use was excused. *Gupta*, 140 S.W.3d at 756 (stating that if non-breaching party elects to treat contract as continuing, previous breach constitutes no excuse for nonperformance by non-breaching party).

Next Statewide alleged that World Access materially breached their agreement by failing to provide service through September 2001. Under the terms of the World Access/Telcom agreement, which the jury impliedly found was incorporated into the parties' oral agreement, World Access was required to provide telephone service through September 2001. The record confirms that World Access did not provide Statewide any telephone services after May 2001. Even assuming that World Access materially breached the agreement by failing to provide service through September 2001, Statewide would still be obligated to pay for services it accepted before the breach. *Mustang Pipeline Co.*, 134 S.W.3d at 196. The fact that World Access may have materially breached the agreement by failing to provide telephone services after May 31, 2001, constitutes no evidence to support the jury's finding excusing Statewide's contractual duty to pay for charges incurred before May 31.

Finally, Statewide alleged that World Access materially breached their agreement by failing to provide the required notice of early termination. World Access temporarily disconnected Statewide's service on May 8, 2001; service was reconnected shortly thereafter, and Statewide was able to resume its telemarketing operations. World Access permanently terminated Statewide's service on May 31. World Access does not dispute that it failed to give Statewide sixty days' notice before terminating service in May 2001 as required by the incorporated terms of the World Access/Telcom agreement. Assuming that World Access's termination of Statewide's services without proper notice constituted a material breach of their agreement, Statewide's obligation to perform in the future would be discharged. *Id*. However, Statewide's contractual obligations arising in the past would not be excused. *Id*. Furthermore, because Statewide continued to use World Access's services after the temporary interruption of services on May 8, Statewide is not excused from paying for telephone services it accepted through May 31. *Gupta*, 140 S.W.3d at 756. World Access only sued Statewide for services provided between January and May 2001. Therefore, World Access's failure to provide Statewide with adequate notice of termination at the end of May is legally insufficient evidence to support the jury's finding that Statewide's failure to pay for services received in the past was excused.

Because there is no evidence that World Access committed a prior material breach that would excuse Statewide's failure to pay for the services it received, we hold that the district court erred by refusing to grant World Access's motion for JNOV. We sustain World Access's issue on appeal.

14

**Statewide's cross-appeal**

Having held that the district court erred by impliedly denying World Access's motion for JNOV, we must now consider Statewide's cross-appeal. Statewide contends that district court should have disregarded the jury's finding that it incurred "$0.00" in damages as a result of World Access's breach of their agreement. As we have held, the jury impliedly found that the provisions of the written World Access/Telcom agreement were incorporated into the oral agreement between World Access and Statewide. Paragraph 9 of that agreement explicitly provides that neither party "shall be liable to the other for any consequential, indirect, special or incidental damages whatsoever, including, without limitation, any loss of revenue, goodwill, or profits or claims by third parties or otherwise in connection with or related to any of the services provided pursuant to this Agreement." All of Statewide's claims for consequential damages and lost profits resulting from World Access's failure to notify them before terminating its telephone services are barred by paragraph 9. Statewide would have us ignore paragraph 9 of the World Access/Telcom agreement. However, if the written World Access/Telcom agreement was incorporated into the oral agreement between Statewide and World Access, as Statewide alleged and the jury impliedly found, then that includes all of the written agreement's provisions, not just those favorable to one party. Accordingly, the jury correctly found that Statewide did not incur any legally compensable damages as a result of World Access's breach. We hold that the district court did not err by refusing to disregard the jury's finding that Statewide incurred no damages that would offset its liability to pay for the telephone services it previously received.

15

**CONCLUSION**

Because there is no evidence that World Access committed a prior material breach that would excuse Statewide's failure to pay for the telephone services it received, we hold that the district court should have granted World Access's motion for JNOV and disregarded the jury's finding that World Access take nothing on its claim. Accordingly, we reverse the district court's judgment, render judgment based on the jury's remaining findings, and order that World Access be awarded $64,462.76 in damages and $15,000 in attorney's fees.[3]

_____

Bea Ann Smith, Justice

Before Justices B. A. Smith, Patterson and Puryear: Opinion by Justice B. A. Smith
        Concurring Opinion by Justice Patterson

Reversed and Rendered

Filed: October 17, 2006

_____

[3] A person may recover reasonable attorney's fees in a suit on an oral or written contract. Tex. Civ. Prac. & Rem. Code Ann. § 38.001(8) (West 1997). The jury found that $15,000 would reasonably compensate World Access for attorney's fees incurred while preparing for and litigating the underlying claim; Statewide does not contest this finding on appeal.