Opinion issued August 31, 2007






 






In The

Court of Appeals

For The

First District of Texas






NO. 01-05-00196-CV






SHIHCHE E. LIN, INDIVIDUALLY AND D/B/A APTUS COMPANY, AND
SUNG-PING H. LIN, Appellants


V.


METRO ALLIED INSURANCE AGENCY, INC. AND C. MICHAEL
MCGLOTHLIN, Appellees






On Appeal from the 189th District Court

Harris County, Texas

Trial Court Cause No. 2000-56702






MEMORANDUM OPINION


 A jury found that Metro Allied Insurance Agency, Inc. and C. Michael
McGlothlin (collectively "Metro") negligently and in violation of the Texas
Deceptive Trade Practices Act ("DTPA"), caused damages to Shihche E. Lin,
individually and d/b/a Aptus Company, and Sung-Ping H. Lin (collectively "Lin"). 
Metro moved for and was granted a Judgment Notwithstanding the Verdict ("JNOV")
ordering that Lin take nothing. Lin complains that the trial court erred in granting the
JNOV because there was sufficient evidence: (1) to show that Metro knowingly
engaged in an unconscionable course of action that was a producing cause of
damages to Lin under the DTPA, (2) to show that Metro's negligence proximately
caused damages to Lin, and (3) to justify the trial court's submission of the issues to
the jury. Metro raises three cross-points arguing that, if we hold that there was some
evidence of liability and damages under both the negligence and DTPA causes of
action, we should also hold that the evidence is factually insufficient. We reverse and
remand.

Background

 In November 1998, Lin was awarded a $1,265,110 contract with the U.S.
Government to upgrade the technology in a hydroelectric plant located in Sault Sainte
Marie, Michigan. The terms of the contract required Lin to purchase and maintain
both a Performance Bond, to ensure the timely performance of the contract, and a
Commercial General Liability Insurance ("CGL") policy. (1) Accordingly, Lin
purchased a Performance Bond from Chatham Reinsurance Company and began
searching for a CGL policy. The search took almost one year, and Lin testified that,
in his search for a CGL policy, he was looking for a comprehensive plan that would
protect him in the event that there was a problem with his performance under the
government contract. He received quotes from two agencies: Elbert Insurance and
Metro. On the Elbert quote, the line providing for "contractual coverage" was
checked. This was an indication, according to Lin, that the Elbert policy would have
protected against claims resulting from any breach of contract. Lin faxed Metro a
copy of the Elbert quote as an example of the coverage that he was seeking. 
McGlothlin, Metro's agent, testified that the Elbert quote was in Lin's file, but there
was no testimony reflecting that the quote he provided Lin was based on the Elbert
quote. Lin accepted a policy offer from Metro and paid the requisite premium in
January 2000. 

 Six months later, in June of 2000, Lin's government contract was terminated,
and the surety company fulfilled the remainder of his contractual obligations in
accordance with the terms of the Performance Bond. After the contract was
terminated, Lin canceled his CGL policy with Metro and was refunded a pro-rated
portion of the premium. The surety company later brought suit against Lin, seeking
$200,000 in indemnity under the Performance Bond for the expenses it incurred while
completing Lin's government contract. (2) 

 After representing himself for more than one year in the surety's suit, Lin asked
Metro to defend him under the terms of his CGL policy. Lin testified that McGlothlin
indicated that an insurance defense lawyer would be available to represent him. 
According to Lin, on multiple occasions, McGlothlin promised that he was covered
under the CGL policy. Lin further testified that what followed these promises,
however, was months of waiting for an attorney to represent him. Lin notified
McGlothlin that the surety had filed a motion for summary judgment in its suit against
him, and the next month Lin received a letter from McGlothlin's errors and omissions
attorney indicating that Lin's claim was denied. The summary judgment was granted,
and, several months later, Lin paid the surety company $175,000 in settlement. Lin
was eventually informed by McGlothlin that no policy had actually been written for
him. 

 McGlothlin, on the other hand, testified that he never made any promises to Lin
regarding coverage under the CGL policy, and, that it would be unusual for a CGL
policy to have included the type of coverage Lin was seeking. He emphasized in his
testimony that the only representations he made to Lin were that he had a policy. It
was not until Lin made a claim under the policy that McGlothlin realized that he
could not locate Lin's file. According to McGlothlin, he spent a substantial amount
of time looking for Lin's file, and he came to the conclusion that the file had been
removed from his desk prior to the policy being written and was taken to an off-site
storage facility without his knowledge. After discovering that no policy existed,
McGlothlin notified his errors and omissions carrier and later informed Lin of the
problem. (3) Lin sued Metro, alleging that Metro was negligent and violated the
DTPA by failing to obtain an insurance policy that would have covered his
contractual liability to the surety company. The jury returned a verdict in Lin's favor
and awarded him $175,000 as compensation for his negligence claim, $200,000 as
compensation for his DTPA claim, and $300,000 in additional DTPA damages. 
Metro moved for a JNOV and argued that Lin had presented no evidence of either
causation or damages in any of his claims. The trial court granted Metro's JNOV, and
Lin filed this appeal. 


JNOV

 In four issues, Lin complains that the trial court improperly granted Metro's
motion for JNOV because there was sufficient evidence to sustain the jury's findings
that (1) Metro knowingly engaged in an unconscionable course of action that was the
producing cause of harm to Lin and (2) Metro's negligence proximately caused Lin
harm. Lin also asserts that there was sufficient evidence to justify the trial court's
submission of the issues to the jury. 

A. Standard of Review

 An appellate court reviews a JNOV under a no-evidence standard of review. 
Williams v. Briscoe, 137 S.W.3d 120, 124 (Tex. App.--Houston [1st Dist.] 2004, no
pet.). Under this standard of review, we will affirm the JNOV only if the record
reveals one of the following: (1) the complete absence of a vital fact, (2) the court is
barred by the rules of law or of evidence from giving weight to the only evidence
offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more
than a scintilla, or (4) the evidence conclusively established the opposite of the vital
fact. City of Keller v. Wilson, 168 S.W.3d 802, 810 (Tex. 2005). More than a
scintilla of evidence exists if the evidence "rises to a level that would enable
reasonable and fair-minded people to differ in their conclusions." King Ranch, Inc.
v. Chapman, 118 S.W.3d 742, 751 (Tex. 2003). If the evidence does no more than
create a mere surmise or suspicion of fact, less than a scintilla of evidence exists. Id. 
 In our review, we consider only the evidence and reasonable inferences that
tend to support the jury's findings. Best v. Ryan Auto Group, Inc., 786 S.W.2d 670,
671 (Tex. 1990) (per curiam); Williams, 137 S.W.3d at 124. That is, we view the
evidence in the light most favorable to the verdict. Williams, 137 S.W.3d at 124.

B. DTPA

 In issue one, Lin argues that the trial court erred in granting the JNOV because
there was sufficient evidence to support the findings that McGlothlin engaged in an
unconscionable course of action that was the producing cause of $200,000 in
damages to Lin. In issue two, Lin contends that the trial court erred in granting the
JNOV because the evidence was sufficient to support the findings that McGlothlin
knowingly engaged in an unconscionable course of action that was the producing
cause of $300,000 in damages to Lin. We agree.

 The jury was asked:

QUESTION 3


 Did Mike McGlothlin/Metro Allied Insurance engage in any
unconscionable action or course of action that was a producing cause of
damages to the Plaintiffs?


 "Producing cause" means an efficient, exciting, or contributing
cause that, in a natural sequence, produced the damages, if any. There
may be more than one producing cause.


 An unconscionable action or course of action is an act or practice
that, to a consumer's detriment, takes advantage of the lack of
knowledge, ability, experience, or capacity of the consumer to a grossly
unfair degree.


 Answer "Yes" or "No"


 Answer: (Yes)


The jury found that Lin should be compensated $200,000 because of such conduct. 
Because it answered Question 3 "yes," the jury was asked:

QUESTION 5


 Did Mike McGlothlin and/or Metro Allied Insurance engage in
any such conduct knowingly?


 "Knowingly" means actual awareness, at the time of the conduct,
of the falsity, deception, or unfairness of the conduct in question. 
Actual awareness maybe [sic] inferred where objective manifestations
indicate that a person acted with actual awareness.


 In answering this question, consider only the conduct that you
have found was a producing cause of damages to Shihche E. Lin,
Individually and d/b/a Aptus and Sung-Ping Lin.


 Answer "Yes" or "No"


 Answer: (Yes)


The jury awarded an additional $300,000 to Lin because Metro's conduct was
committed knowingly. (4)

 As submitted, Lin's DTPA cause of action required a showing that McGlothlin
(1) engaged in an unconscionable act or course of action (2) that was a producing
cause of damages. If the jury believed that McGlothlin did engage in such an activity,
then Lin must show (3) that the act or course of action was committed knowingly and
(4) caused damage to him. 

 1. Engaged in Unconscionable Act or Course of Action

 It is undisputed that Metro did not issue a CGL policy for Lin, despite
representing to him that a policy had been issued and despite Metro's acceptance of
Lin's premium payment. Lin testified that McGlothlin repeatedly assured him that
Metro's policy would cover him in his defense against the surety's claim. Lin even
testified that, on one occasion, McGlothlin told him that Lin's missing file had been
found, and the file reflected that Lin was insured by Burlington Insurance. Over the
course of one year, Lin continued to pursue his right to legal representation under his
Metro policy, and, in response, Lin was assured that his lawyer would be furnished
"Tuesday," "next week," "week after next," "in ten days," and "in 60 days." Lin
testified that, in May, McGlothlin told him that he "had coverage" and that
McGlothlin was "working with the insured's lawyer to defend my case." Seven
months later, Lin learned that there was no policy, no coverage, and no legal
representation for him in the surety's case. Because Lin was repeatedly assured that
he was covered under the Metro policy, he did not seek representation elsewhere, he
did not attempt to negotiate with the surety company, and he went to trial
unrepresented, ultimately resulting in a $175,000 settlement.

 The jury was instructed that "an unconscionable action or course of action is
an act or practice that, to a consumer's detriment, takes advantage of the lack of
knowledge, ability, experience, or capacity of the consumer to a grossly unfair
degree." We conclude that there is more than a scintilla of evidence that, to Lin's
detriment, McGlothlin's course of action took advantage of Lin's lack of knowledge
to a grossly unfair degree. 

 2. Action was Producing Cause of Damages

 We must next determine if there was more than a scintilla of evidence to show
that McGlothlin/Metro's action or course of action was the producing cause of Lin's
damages. The jury was instructed that '"[p]roducing cause' means an efficient,
exciting, or contributing cause that, in a natural sequence, produced the damages, if
any. There may be more than one producing cause." The evidence, when reviewed
in the light most favorable to Lin, establishes that, had McGlothlin not represented
to Lin that he was covered under the policy, Lin would have had an opportunity to
obtain coverage elsewhere, such as from Elbert Insurance, which gave him the
original coverage quote. Had he been covered elsewhere, Lin would not have been
personally responsible for the settlement of the surety's claim. We conclude that
there is more than a scintilla of evidence to support the jury's affirmative finding to
jury Question 3--"Did Mike McGlothlin/Metro Allied Insurance engage in any
unconscionable action or course of action that was a producing cause of damages to
the Plaintiffs?" Accordingly, we sustain issue one.

 3. Action was Knowingly Committed

 Under the additional DTPA damages claim, the jury was asked if
McGlothlin/Metro engaged in the conduct knowingly. The jury was instructed that
'"[k]nowingly' means actual awareness, at the time of the conduct, of the falsity,
deception, or unfairness of the conduct in question. Actual awareness maybe [sic]
inferred where objective manifestations indicate that a person acted with actual
awareness."

 Lin testified that McGlothlin knew "early on" that no policy had been issued,
but he continued to mislead Lin to Lin's detriment. McGlothlin even told Lin that he
had been in contact with the lawyer who would be representing Lin in the surety suit
when, in fact, there was no such lawyer. Lin testified that McGlothlin repeatedly told
him not to communicate with the surety's lawyers until his lawyer became available. 
We conclude that there is more than a scintilla of evidence that McGlothlin/Metro
knowingly engaged in the action or course of action.

 4. Action Caused Damage 

 The jury was asked to determine if McGlothlin/Metro's knowing conduct was
a producing cause of damages to Lin. As previously stated, had Lin been insured, he
would not have been personally liable for the surety's claim. Furthermore, Lin
testified that he was in the process of entering into settlement negotiations with the
surety when McGlothlin told him not to contact the surety's lawyers until his lawyer
became available. Three months later, the surety filed a motion for summary
judgment, which was ultimately granted. We conclude that there is more than a
scintilla of evidence to support the jury's affirmative finding to jury Question 5. 
Accordingly, we sustain issue two.

C. Negligence

 In issue three, Lin argues that the trial court erred in granting the JNOV
because there was sufficient evidence to sustain the jury's finding that Metro's
negligence proximately caused him damages in the amount of $175,000. We agree. 
 Here, the jury was asked:

QUESTION 1


Did the negligence, if any, of Michael McGlothlin/Metro Allied
Insurance Agency, Inc., proximately cause the injury in question?


 Answer "Yes" or "No": (YES)


"Negligence," when used with respect to the conduct of any person,
means failure to use ordinary care, that is, failing to do that which a
person of ordinary prudence would have done under the same or similar
circumstances or doing that which a person of ordinary prudence would
not have done under the same or similar circumstances.


 "Ordinary care," when used with respect to the conduct of any
person, means that degree of care that would be used by a person of
ordinary prudence under the same or similar circumstances. 


 "Proximate cause" means that cause which, in a natural and
continuous sequence, produces an event, and without which cause such
event would not have occurred. In order to be a proximate cause, the act
or omission complained of must be such that a person using ordinary
care would have foreseen that the event, or some similar event, might
reasonably result therefrom. There may be more than one proximate
cause of an event. 


 The jury's finding was unanimous, but the trial court granted Metro's motion
for JNOV. If there is more than a scintilla of evidence that "the negligence, if any,
of [Metro], proximately cause[d] the injury in question," the trial court erred. See
City of Keller, 168 S.W.3d at 810.

 In the context of the instant appeal, it is well established that an insurance
agent agreeing to obtain insurance owes the legal duty to obtain the insurance and,
if he cannot, he must notify his principal of failure. May v. United Servs. Ass'n of
Am., 844 S.W.2d 666, 669 (Tex. 1992); Frazer v. Tex. Farm Bureau Mut. Ins. Co.,
4 S.W.3d 819, 822 (Tex. App.--Houston [1st Dist.] 1999, no pet.). Implicit in a case
alleging negligent failure to obtain insurance is the requirement that the loss be one
that is covered in some policy. See Hardware Dealers Mut. Ins. Co. v. Berglund, 393
S.W.2d 309, 310-11 (Tex. 1965); see also Stinson v. Cravens, Dargen & Co., 579
S.W.2d 298, 300 (Tex. Civ. App.--Dallas 1979, no writ) (affirming instructed verdict
where appellant failed to bring loss under coverage of any policy shown by evidence
to be available). 

 Through McGlothlin's testimony, Metro conceded that it agreed to obtain a
CGL policy for Lin, accepted payment for said policy, and failed to obtain the policy. 
McGlothlin also testified that Lin was not notified of the failure to obtain a policy
until McGlothlin, himself, discovered the failure. McGlothlin testified that he
notified his errors and omissions carrier "[b]ecause I knew that somebody in my
office had messed up and I was responsible for it, and I was going to take
responsibility for it, and provided there was a covered peril." This testimony
constitutes some evidence of the existence of a legal duty and breach of that duty on
the part of Metro. See Frazer, 4 S.W.3d at 822. 

 In addition, the evidence admitted at trial included the Elbert quote, which Lin
testified was faxed to Metro and he asked that the Elbert quote "will be my model"
and an example of the type of policy he sought. On the Elbert quote, the line
providing for "contractual coverage" was checked. According to Lin, this indicated
that the Elbert policy would have protected against claims like the surety's claims in
the underlying suit. Furthermore, McGlothlin acknowledged that he had received the
Elbert quote from Lin and that it seemed to include coverage for contractual liability. 
This evidence rises to a level that would enable reasonable and fair-minded people
to differ in their conclusions, and it is, thus, more than a scintilla of evidence that
Lin's contractual liability would have been covered under some policy. See Stinson,
579 S.W.2d at 300. Finally, it was forseeable to McGlothlin that his failure to prepare
or obtain a policy for Lin would leave Lin uninsured. We conclude that there is more
than a scintilla of evidence to support the jury's affirmative finding to Question 1. 

 Accordingly, we overrule Lin's second issue.

D. Submission

 In his fourth issue, Lin argues that "there is sufficient evidence to require
submission to the jury." Having found more than a scintilla of evidence to support
the jury's findings for each of the questions submitted, we sustain issue four. 

 Despite this evidence supporting the jury's findings in the case, Metro argues
that it was entitled to a JNOV because "no evidence was presented that if an attorney
had been hired to represent Lin in the surety lawsuit the outcome would have been
different." Metro contends that a CGL policy is not a performance bond, and that
Lin's proof that he could have gotten a CGL policy is no evidence that a policy to
cover the breach of contract could have been obtained in this case. Thus, Metro
argues that there was no evidence of causation to support any liability findings in this
case. Concerning proof of the outcome, Lin complains that he was entitled to
representation as well as coverage for the claim under the policy he requested. 
Further, even if a CGL policy would not normally cover contracts, Lin presented
evidence of a CGL policy that covered contractual claims, and, thus, he created a fact
issue with respect to proximate cause for the negligence claim and producing cause
for the DTPA claim that was resolved in Lin's favor. McGlothlin also testified that
a CGL policy for breach on contract would be "fairly rare," not that it was
unavailable. In other words, the jury chose to believe Lin when he testified that he
would have obtained a policy that would have covered the loss he suffered had Metro
not acted negligently as found by the jury. The putative insured is not required to
"prove a specific policy in order to show that he was adversely affected" by the
failure of the insurance agent to obtain the policy. Parkins v. Tx. Farmers Ins. Co.,
645 S.W.2d 775, 776 (Tex. 1983). 

Factual Sufficiency


 In three cross-points, Metro contends that there was factually insufficient
evidence to support (1) the jury's response to the liability issues under both the DTPA
and negligence theories, (2) the damage findings under Lin's DTPA and negligence
theories, and (3) the jury's answer that the unconscionable conduct of
McGlothlin/Metro resulted in a damage award of $300,000.

A. Standard of Review 

 In reviewing a factual sufficiency point, we consider all the evidence
supporting and contradicting the finding. Plas-Tex, Inc. v. U.S. Steel Corp., 772
S.W.2d 442, 445 (Tex. 1989); HTS Servs., Inc. v. Hallwood Realty Partners, L.P.,
190 S.W.3d 108, 111 (Tex. App.--Houston [1st Dist.] 2005, no pet.). We set aside
the verdict only if the finding is so contrary to the overwhelming weight of the
evidence as to be clearly wrong and unjust. Cain v. Bain, 709 S.W.2d 175, 176 (Tex.
1986). Jurors are the sole judges of the credibility of the witnesses and the weight to
give their testimony. City of Keller, 168 S.W.3d at 819. They may choose to believe
one witness and disbelieve another. Id.

B. Liability

 Metro contends that there was insufficient evidence to support a finding that
the breach of a contract surety claim would have been covered by a CGL policy. On
appeal, Metro argues that it "would submit to the Court that [it is] not aware of any
insurance policy, of any type, that would insure a person for his obligations in
entering into a contractual agreement as part of the purchase of a Performance Bond." 
 McGlothlin testified that he had "never encountered a surety issue on a CGL
deal before" and, when asked if it was his understanding that the CGL policy will
cover a surety's claim, McGlothlin responded, "never." However, when asked
whether he had seen an MGA (5) [managing general agent] who provided contractual
liability in a CGL policy, he acknowledged that it "would be fairly rare," without
ruling out the possibility. McGlothlin testified that it was rare for a CGL policy to
include a contract provision, but he acknowledged that the Elbert CGL policy did
appear to cover contract disputes. McGlothlin explained that, "in the surplus lines
policy (6) there is no standard. It's not like your standard Texas auto policy. Different
companies buy different types risks and policies on surplus lines policies. . . ." The
company determines coverage under those policies. 

 Metro contends that Lin could have proved coverage by "introducing a
standard CGL policy and having a qualified insurance expert give his opinion that a
surety claim would have coverage under the policy." We disagree. By presenting
evidence of some policy that would cover the claim, Lin, at the very least, created a
fact question as to coverage. See Berglund, 393 S.W.2d at 310-11; see also Stinson,
579 S.W.2d at 300. The jury may choose to believe one witness and disbelieve
another. City of Keller, 168 S.W.2d at 819. Reviewing the evidence in a neutral
light, we conclude that the finding was not so contrary to the overwhelming weight
of the evidence as to be clearly wrong and unjust. See Cain, 709 S.W.2d at 176. 
Accordingly, we overrule Metro's cross-point one.

C. Damages

 1. DTPA and Negligence

 In cross-point two, Metro asserts that there was factually insufficient evidence
presented to the jury to support the damage findings under Lin's DTPA and
negligence theories. Specifically, Metro argues that "no evidence was presented that
if an attorney had been hired to represent Lin in the surety lawsuit the outcome would
have been different." Thus, Metro argues that there was no evidence of causation to
support the damage findings. We disagree. 

 In its briefing, Metro states that this is the same argument that it makes with
respect to causation to support any finding of liability in this case. As noted above
this argument oversimplifies Lin's complaint: Lin complains that he was entitled to
representation as well as coverage for the claim under the policy he requested. As
noted above the evidence created a fact issue with respect to causation, and the fact
issue was resolved in Lin's favor. We overrule cross-point two.

 2. Mental Anguish

 In cross-point three, Metro contends that there was factually insufficient
evidence to support the jury's answer that the unconscionable conduct of
McGlothlin/Metro resulted in a damage award of $300,000. 

 After unanimously finding that McGlothlin and/or Metro knowingly engaged
in an unconscionable act or course of action, the jury was asked:

QUESTION 6


 What sum of money, if any, in addition to actual damages, should
be awarded to Shihche E. Lin, Individually and d/b/a Aptus and Sung-Ping Lin against Mike McGlothlin and/or Metro Allied Insurance
because their conduct was committed knowingly?


 Answer in dollars and cents, if any.


 Answer: ($300,000.00)


"Damages" was not defined in the charge, and Metro did not object to the wording
of the charge. Metro contends that evidence is factually insufficient to support a
$300,000 finding of "mental anguish damages." However, the jury's finding was not
confined to mental anguish damages. Under a "knowing" violation, the DTPA allows
an additional award of three times the economic damages. See Tex. Bus. & Com.
Code Ann. § 17.50(b)(1) (Vernon Supp. 2006); (7) Tony Gullo Motors I, L.P. v. Chapa,
212 S.W.3d 299, 304 (Tex. 2006) (for DTPA violation, could recover economic
damages, mental anguish, and attorney's fees, but not additional damages beyond
three times economic damages). The jury awarded $175,000 in economic damages. 
It could have awarded up to $525,000 for the knowing violation and still fallen within
the statutory guidelines. Accordingly, we overrule cross-point three.

Conclusion We reverse and remand for the trial court to render judgment consistent with
the jury's findings.



 George C. Hanks, Jr.

 Justice


Panel consists of Justices Taft, Alcala, and Hanks.


1. " 
' 
 -- 
 ' " 
 -- 
2. 
 
 
3. Lin had made premium payments, and, when Lin cancelled the policy on June 26,
2000 after the government contract was terminated, he was issued a pro rata refund. 
Once it was discovered that Metro had not issued a policy, Lin was refunded the
remainder of the premiums paid.
4. Lin did not object to the charge, but the trial court overruled Metro's no-evidence
objection to the charge. Metro did not object to the form of the charge. 
5. McGlothlin explained that an "MGA" was a managing general agent who represents
"a number of carriers."
6. A "surplus lines policy" is one where the rates are not determined by the state. 
7. Section 17.50(b)(1) provides that a DTPA plaintiff may recover:


 the amount of economic damages found by the trier of fact. If the trier of fact
finds that the conduct of the defendant was committed knowingly, the
consumer may also recover damages for mental anguish, as found by the trier
of fact, and the trier of fact may award not more than three times the amount
of economic damages; or if the trier of fact finds the conduct was committed
intentionally, the consumer may recover damages for mental anguish, as found
by the trier of fact, and the trier of fact may award not more than three times
the amount of damages for mental anguish and economic damages.


Tex. Bus. & Com. Code Ann. § 17.50(b).