Opinion issued April 6, 2011



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-09-00129-CV

———————————

Kim Priebe, Appellant

V.

Beverly
A’Hearn, Appellee



 



 

On Appeal from the 113th District Court

Harris County, Texas



Trial Court Case No. 2004-25123A

 



 

Memorandum OPINION ON REHEARING

Appellant
Kim Priebe filed a motion for rehearing and a motion for en banc
reconsideration of our memorandum opinion issued on December 16, 2010.  We grant rehearing, deny as moot her motion
for reconsideration en banc, withdraw our opinion and judgment, and issue the
following in their stead.  Our
disposition remains unchanged.  

Priebe filed suit against her
stepmother Beverly A’Hearn, alleging defamation and intentional infliction of
emotional distress.  The trial court
granted A’Hearn’s motion for directed verdict on the defamation claim.  After a trial on the merits, the jury found
A’Hearn liable for intentional infliction of emotional distress and awarded
Priebe mental anguish damages and nominal exemplary damages.  The trial court granted A’Hearn’s motion for
judgment notwithstanding the verdict. 
Priebe appeals, arguing that the trial court erred in denying her claims
as a matter of law.  She asks this Court to
reverse and remand for trial on the defamation claim and to reverse and render
judgment in her favor on the intentional infliction of emotional distress claim.  We affirm.

Factual Background

          Priebe’s father and
A’Hearn’s husband, Richard Priebe, was diagnosed with terminal cancer.  Priebe testified that during her father’s
illness, she tried to visit him as frequently as her work schedule would allow
because she wanted to spend as much time with him as she could before he passed
away.  On at least one occasion, Priebe
tried to discuss funeral arrangements and other end-of-life matters with her
stepmother, but A’Hearn refused to discuss the matter.  At trial, Priebe opined that A’Hearn wanted
Mr. Priebe to die quickly so that she could get on with her own life.  

After falling and suffering a
broken hip, Mr. Priebe was prescribed hospice care and admitted to a nursing
home facility in early 2003.  A’Hearn did
not tell Priebe about the fall or about her father being moved to a nursing
home.  After contacting one of her
father’s friends, Priebe discovered he was in hospice care at the nursing home,
and she went to see him.  A’Hearn
testified that during one visit she ordered Priebe to leave after she witnessed
Priebe leaning on her father’s leg and causing him severe pain.  Priebe testified that she never touched her
father’s leg or caused him any pain.  The
next day, while Priebe was sitting with her father, A’Hearn noticed that
several of the morphine patches prescribed to Mr. Priebe were missing.  A’Hearn contacted a nurse and asked Priebe if
she knew anything about the missing patches and whether she had removed
them.  Frustrated by Priebe’s response,
A’Hearn testified that she said, “I’m not going to deal with this.  Out. 
I want you to leave.  Out.”  A’Hearn also spoke to a hospital administrator
who allowed Priebe to finish her visit with a member of the nursing home staff
in the room with her and then instructed Priebe to leave the nursing home
premises.

Mr. Priebe died on February 25,
2003.  A’Hearn did not personally inform
Priebe of her father’s passing, but Priebe’s mother informed her the same
day.  A’Hearn had Mr. Priebe’s body
cremated, and his ashes were interred. 
No funeral was held and no obituary was published.  Priebe was not informed of her father’s
cremation and was not included in any discussion about how his remains would be
handled.  A’Hearn hosted a “celebration-of-life”
dinner at her home, but she did not invite Priebe.

Several weeks after Mr. Priebe’s
death, A’Hearn called the constable because she suspected that Priebe had tried
to enter the house without her permission. 
In a letter dated March 18, 2003, A’Hearn notified Priebe that she was
not to come to her home and that she would bring charges against her if she
did.  The letter also informed Priebe
that A’Hearn had already discussed the matter with the police, indicated that
she had retained counsel, and instructed Priebe not to contact her, any members
of her family, or any of Mr. Priebe’s former business partners.

Priebe initially filed a Rule 202
petition seeking to depose A’Hearn to investigate potential claims, but she did
not allege any causes of action.  Based
on the events surrounding her father’s death, Priebe filed her first
supplemental petition on February 7, 2005, in which she alleged claims against
A’Hearn for defamation, conversion, and intentional infliction of emotional
distress for the first time.  The trial
court later transferred Priebe’s conversion claim to the probate court.  At trial, the court granted A’Hearn’s motion
for directed verdict on the defamation claim on limitations grounds.  The jury found A’Hearn liable for intentional
infliction of emotional distress, and awarded Priebe $90,000 in damages for
mental anguish, as well as $1 in exemplary damages.  A’Hearn filed a motion for judgment
notwithstanding the verdict, which the trial court granted.  In two issues, Priebe argues on appeal that
(1) the trial court erred in granting the JNOV on the intentional
infliction of emotional distress claim because the unanimous jury verdict in her
favor was supported by substantial and compelling evidence, and (2) the
trial court erred in granting A’Hearn’s motion for directed verdict on the
defamation claim and in refusing to submit Priebe’s proposed jury questions and
instructions to the jury because there was substantial and compelling evidence
to support her claim.

Analysis

I.                 
Defamation

In her second issue, Priebe argues
that the trial court erred in granting A’Hearn’s motion for directed verdict on
the defamation claim.  Specifically,
Priebe contends that there was substantial and compelling evidence that A’Hearn
made false statements that harmed her, and she argues that her defamation claim
was not barred by the statute of limitations because there were genuine issues
of material fact as to A’Hearn’s alleged fraudulent concealment and the
application of the discovery rule.

A directed verdict in favor of the
defendant should be granted when (1) the plaintiff admits or the evidence
conclusively establishes a defense to the plaintiff’s cause of action, or (2)
the plaintiff fails to present sufficient evidence to raise a fact issue
essential to the plaintiff’s right of recovery. 
Prudential Ins. Co. of Am. v. Fin.
Review Servs., Inc., 29 S.W.3d 74, 77 (Tex. 2000).  In an appeal from a directed verdict, an
appellate court must consider all of the evidence in the light most favorable
to the party against whom the verdict was granted and disregard all contrary
evidence and inferences.  Click v. Owens-Corning Fiberglass Corp.,
899 S.W.2d 376, 377 (Tex. App.—Houston [14th Dist.] 1995, no writ) (citing
Collora v. Navarro, 574 S.W.2d 65, 68
(Tex. 1978)).  “If an issue of fact is
raised by the evidence, the case must go to the jury . . . .”  Wright
v. General Motors Corp., 717 S.W.2d 153, 155 (Tex. App.—Houston [1st Dist.]
1996, no writ).  We must reverse the
trial court’s judgment if there is evidence on a controlling fact about which
reasonable minds could differ.  Id.

To establish her claim for
defamation, Priebe was required to prove that A’Hearn published, either orally
or in writing, a false, defamatory statement concerning her while acting
negligently in regards to the truth of the statement. WFAA-TV v. McLemore, 978
S.W.2d 568, 571 (Tex. 1998); see Tex. Civ. Prac. & Rem. Code Ann. § 73.001
(West 2005).  The statute of
limitations for defamation is one year.  Tex. Civ. Prac. & Rem. Code Ann. § 16.002(a)
(West 2002).  Generally, a cause of
action for libel or slander accrues on the day the words are printed or
spoken.  Wheeler v. Methodist Hosp. 95 S.W.3d 628, 636 (Tex. App.—Houston
[1st Dist.] 2002, no pet.); Martinez v.
Hardy, 864 S.W.2d 767, 774 (Tex. App.—Houston [14th Dist.] 1993, no writ).  However, the discovery rule applies to an
action for defamation when a defamatory statement is inherently undiscoverable
or not a matter of public knowledge.  San Antonio Credit Union v. O’Connor,
115 S.W.3d 82, 96 (Tex. App.—San Antonio 2003, pet. denied); see Wheeler, 95 S.W.3d
at 636–37.  In such
cases, the limitations period begins to run when the plaintiff learns, or
should have learned, of the existence of the defamatory statement.  Wheeler,
95 S.W.3d at 636–37.  Whether the discovery rule applies is a
question of law.  San Antonio Credit Union, 115 S.W.3d at 96; Steel v. Rhone Poulenc, Inc., 962 S.W.2d 613, 618 (Tex.
App.—Houston [1st Dist.] 1998), aff’d,
997 S.W.2d 217 (Tex. 1999).

After Priebe’s case-in-chief,
A’Hearn moved for a directed verdict on limitations grounds and also argued
that Priebe had not established that the statements were false.  Priebe objected, arguing that despite her due
diligence she did not learn about the defamatory statements until December
2004, and that based on application of the discovery rule, her claim was filed
within the limitations period.  The trial
court granted A’Hearn’s motion for directed verdict as to all the statements on
the basis that the limitations period had passed.

Priebe first alleged a cause of
action for defamation in her first supplemental petition filed February 7,
2005.  At trial she alleged that A’Hearn
made three defamatory statements: two at the nursing home and a third in which
she accused Priebe of breaking into her home. 
All of the statements were made in February or March 2003.  A’Hearn contends that the limitations period
passed and that the discovery rule does not apply because Priebe admitted
during the trial that she knew of the nature of the statements when they were
made in February and March 2003.  But if
the discovery rule applies, then the statute of limitations would not bar Priebe’s
claim unless she learned, or in the exercise of reasonable diligence should
have learned, of A’Hearn’s statements before limitations expired.  See
Newsom v. Brod, 89 S.W.3d 732, 736 (Tex. App.—Houston [1st Dist.] 2002, no
pet.). 
Relying on Mendoza v. Fidelity
and Guaranty Ins. Underwriters, Inc., 606 S.W.2d 692, 694 (Tex. 1980), A’Hearn
argues that her limitations defense was conclusively established when Priebe
admitted on cross-examination that she knew the nature of the statements around
the time the statements were made:

Defense
Counsel:  So when you were kicked out, you
didn’t inquire as to why you were being asked to leave?

 

Priebe:                  Yes, I did.  That was the patch thing that [A’Hearn] had
made up.

 

. . . 

 

Defense
Counsel:  But [A’Hearn] had allegedly
accused you of hurting your father.  You
knew about that, didn’t you?

 

Priebe:                  Yeah.  But that was another story.

 

. . . 

 

Defense
Counsel:  So you knew when you left that
[A’Hearn] had accused you of all these things?

 

Priebe:                  The nursing staff told me,
yes.

 

A statement by a litigant that
contradicts his position is not a binding judicial admission unless “it would
be unjust to permit a party to recover after he has sworn himself out of court
by clear, unequivocal testimony.”  Mendoza, 606 S.W.2d at 694 (“A party’s
testimonial declarations which are contrary to his position are
quasi-admissions.”).  A statement
contrary to a party’s position will be characterized as a judicial admission if:
(1) the declaration was made during the course of a judicial proceeding;
(2) the statement is contrary to an essential fact embraced in the party’s
theory of recovery; (3) the statement is deliberate, clear, and
unequivocal; (4) giving conclusive effect to the declaration is consistent
with the public policy on which the rule is based; and (5) the
statement is not also destructive of the opposing party’s theory of
recovery.  Id.  

To rise to the level of a judicial
admission, Priebe’s testimony had to be “deliberate, clear, and unequivocal”
and not the result of a mistake or a “slip of the tongue.”  Id.  Priebe unequivocally testified that the
nursing staff told her in February 2003 that A’Hearn had accused her of
hurting her father and removing medical patches when she left the nursing
home.  With respect to the statements
made at the nursing home, the record does not reveal any confusion on Priebe’s
part about the questions asked or any equivocation in her response.  Accordingly, we find that Priebe’s testimony
meets the five criteria set forth in Mendoza
and is therefore a judicial admission, which serves as conclusive evidence that
Priebe knew the nature of A’Hearn’s alleged defamatory statements at the
nursing home prior to February 6, 2004.

With respect to the allegedly
defamatory statements to the police, Priebe confirmed that she received a
letter in March 2003 notifying her that she was not to come to the house, that
the matter had been discussed with the police, and that A’Hearn would press
charges against her if she came to the house in the future.  She also testified that she knew about
A’Hearn’s statement prior to December 2004 and that she knew “[A’Hearn] had
communicated to [her sister-in-law]” about the alleged break-in.

Given this testimony, the trial
court properly concluded that the discovery rule was inapplicable because the
nature of the statement was not inherently undiscoverable.  See
Ellert v. Lutz, 930 S.W.2d 152, 156–57 (Tex. App.—Dallas 1996,
no writ) (concluding that libelous statement was not inherently undiscoverable
where plaintiff had ready access to her personnel file).  To be inherently undiscoverable, an injury
must, by its nature be unlikely to be discovered within the prescribed
limitations period despite due diligence. 
S.V. v. R.V., 933 S.W.2d 1, 7
(Tex. 1996); Shivers v. Texaco
Exploration Prod., Inc., 965 S.W.2d 727, 734 (Tex. App.—Texarkana 1998,
pet. denied).  Priebe argued that despite
due diligence she was not able to learn of nature of A’Hearn’s statements until
December 2004.  But she knew in March
2003 that the police had been contacted and that A’Hearn would press charges if
she returned to the house without permission. 
It was also evident from her testimony that Priebe learned the nature of
the statements prior to December 2004.  We
conclude that the nature of A’Hearn’s statement was not inherently
undiscoverable.  See S.V., 933 S.W.2d at 7; Shivers,
965 S.W.2d at 734.  We hold that the
trial court properly granted A’Hearn’s motion for directed verdict on
limitations grounds, and we overrule Priebe’s second issue.

II.              
Intentional Infliction of Emotional Distress

In her first issue, Priebe argues
that the trial court improperly granted A’Hearn’s motion for judgment
notwithstanding the verdict because there was substantial and compelling
evidence supporting her claim of intentional infliction of emotional
distress.  A trial court may disregard a
jury’s verdict and render judgment notwithstanding the verdict only if no
evidence supports the jury’s findings, or if a directed verdict would have been
proper.  Tiller v. McLure, 121 S.W.3d 709, 713 (Tex. 2003); Williams
v. Briscoe, 137 S.W.3d 120,
124 (Tex. App.—Houston [1st Dist.] 2004, no pet.).  If, considering the evidence in the light most
favorable to the jury’s verdict, there is more than a scintilla of competent
evidence to support the jury’s findings, the reviewing court must reverse the judgment.  Williams,
137 S.W.3d at 124.

To recover damages for intentional infliction of emotional
distress, a plaintiff must show that: (1) the defendant acted intentionally or
recklessly; (2) the defendant’s conduct was extreme and outrageous; and (3) the
defendant’s conduct caused the plaintiff severe emotional distress.  Hoffman-LaRoche,
Inc. v. Zeltwanger, 144 S.W.3d 438, 445 (Tex. 2004); Standard Fruit & Vegetable Co. v. Johnson, 985 S.W.2d 62, 65
(Tex. 1998).  Because intentional
infliction of emotional distress is a “gap-filler” tort, the plaintiff, in
addition to the above elements, must also establish that there are no
alternative causes of action that would provide a remedy for the severe
emotional distress caused by the defendant’s conduct.  Kroger
Tex. L.P. v. Suberu, 216 S.W.3d 788, 796 (Tex. 2006); Creditwatch, Inc. v. Jackson, 157 S.W.3d 814, 816 (Tex. 2005); Hoffman-La Roche, 144 S.W.3d at
447.  If there is an independent set of
facts that would support a claim for intentional infliction of emotional
distress, then the claim is not barred.  See Hoffman-La Roche, 144 S.W.3d at 450.  But if the gravamen of the plaintiff’s
intentional infliction of emotional distress claim is another tort, the
plaintiff may not maintain the action, regardless of whether the plaintiff chooses to assert the
alternative claim, the plaintiff succeeds on the alternative claim, or the
claim is barred.  Id. at
447–48.

In this case, the trial court granted a directed verdict in
favor of A’Hearn on the defamation claim because the limitations period had
passed.  Because intentional infliction
of emotional distress is a gap-filler tort and mental anguish damages are
recoverable under both defamation and intentional infliction of emotional
distress, Priebe could not simply claim intentional infliction of emotional
distress and thereby circumvent the shorter limitations period for defamation
claims.  Id. at
447; see Standard Fruit & Vegetable,
985 S.W.2d at 68.  To the extent that the
facts underlying Priebe’s defamation claim also supported her intentional
infliction of emotional distress claim, her recovery was barred and the JNOV
was properly granted.

Priebe also alleged facts in support of her intentional
infliction of emotional distress claim that did not support her defamation
claim.  She alleged, among other things,
that A’Hearn did not inform her when her father was moved into a nursing home, excluded
her from discussions concerning the treatment of her father’s remains, failed
to call when her father died, and did not invite her to the celebration-of-life
dinner.  Accordingly, the trial court
could not set aside the jury’s verdict as to these claims unless no evidence
supported its findings, or a directed verdict would have been proper.  Tiller, 121 S.W.3d at 713; Williams, 137 S.W.3d at 124.

Before submitting a question on intentional infliction of
emotional distress to the jury, the court must determine, as a matter of law,
whether the defendant’s conduct was “extreme and outrageous.”  Tiller,
121 S.W.3d at 713; see also Bradford v.
Vento, 48 S.W.3d 749, 758 (Tex. 2001). 
If the court concludes that reasonable minds could differ, the jury,
subject to the court’s control, determines whether the conduct, in a particular
case, was sufficiently extreme and outrageous to result in liability.  Tiller,
121 S.W.3d at 713 (citing GTE Sw., Inc.
v. Bruce, 998 S.W.2d 605, 616 (Tex. 1999)).

A claim for intentional infliction of emotional distress is
rarely meritorious because “most human conduct, even that which causes injury
to others, cannot be fairly characterized as extreme and outrageous.”  Kroger,
216 S.W.3d at 796 (having plaintiff arrested on reasonable belief that she
shoplifted); see Creditwatch, 157
S.W.3d at 817–818 (terminating employee and instructing another employee to
evict her).  To be actionable under this
tort, the conduct must be “so outrageous in character, and so extreme in
degree, as to go beyond all possible bounds of decency, and to be regarded as
atrocious, and utterly intolerable in a civilized community.”  Twyman
v. Twyman, 855 S.W.2d 619, 621 (Tex. 1993) (quoting Restatment (Second) of Torts §46 cmt. d (1965)).  Insensitive or rude behavior is not
considered extreme and outrageous.  See Kroger, 216 S.W.3d at 796.  And “mere insults, indignities, or
annoyances” will generally not be characterized as extreme and outrageous.  GTE Sw.,
998 S.W.2d at 605.

In determining whether conduct is extreme or outrageous,
both the defendant’s course of conduct and relationship with the plaintiff may
be considered.  See Tiller, 121 S.W.3d at 714 (“[A] single act, taken alone, may or
may not rise to the level of ‘extreme and outrageous’ conduct, [but] it is
possible that several acts taken together can amount to such harassment as to
be more than petty oppression.” (citations omitted)).  “Conduct considered extreme and outrageous in
some relationships may not be so in other relationships.”  Toles v. Toles, 45 S.W.3d 252, 261 (Tex. App.—Dallas
2001, pet. denied) (citing Twyman,
855 S.W.2d at 627 (Phillips, C.J., concurring and dissenting) (discussing intentional
infliction of emotional distress in context of divorce)).  Given the volatility of some relationships, it
is inevitable that the parties will suffer some emotional distress when
disagreements arise.  See id.

Priebe testified that A’Hearn did not tell her about her
father’s fall, which precipitated his admission into the nursing home facility;
excluded her from discussions about the after-death treatment of her father’s
remains; did not inform her that Mr. Priebe had signed a “do not resuscitate”
order before entering hospice care; and excluded Priebe from the celebration-of-life
dinner at her house.  A’Hearn also
ordered her to leave the nursing home facility twice, banned her from future
visits, and had her son threaten to forcibly remove Priebe if she refused to
leave.  When Mr. Priebe died, A’Hearn did
not call Priebe to inform her of her father’s death, and several weeks later,
A’Hearn sent Priebe a letter in which she threatened to contact the police if
Priebe came to her home or attempted to contact her or any of her family
members. 

Priebe contends that A’Hearn’s actions were designed to
punish her and to prey on her emotional sensitivities during the period of her
father’s illness and after his death. 
She does not argue that any particular action by A’Hearn was the sole
cause of her emotional distress; rather, she argues that A’Hearn’s course of
conduct, viewed as a whole, was extreme and outrageous.  A course of conduct may be considered in
determining whether conduct is extreme and outrageous, but the fact that
A’Hearn’s conduct could have been perceived as rude and insensitive on several
occasions does not necessarily mean that her conduct was extreme and
outrageous.  Compare Tiller, 121 S.W.3d at 715 (holding that conduct of defendant
who threatened to cancel business contracts, criticized timeliness and
workmanship of projects, and made insensitive, rude, and curt telephone calls
to wife of business contact when he knew that her husband had a malignant brain
tumor, was not extreme and outrageous), with
GTE Sw., 121 S.W.3d at 616 (holding that severe and persistent harassment,
humiliation, and intimidation over course of several years was extreme and
outrageous).

In this case, A’Hearn’s failure to call Priebe when her
father entered the nursing home, as well as her choice to exclude Priebe from
any decisions concerning Mr. Priebe’s remains and memorial service, were
insensitive when viewed from Priebe’s perspective.  However, intra-familial discord of this
variety is not regulated by tort law, and the tort of intentional infliction of
emotional distress does not permit recovery for inconsiderate and unkind
behavior.  See Restatement
(Second) of Torts § 46 cmt. d.  As
the person designated in Mr. Priebe’s power of attorney and as his surviving
spouse, A’Hearn had the right to control the disposition of his remains.  See Tex. Health & Safety Code Ann. § 711.002(a)
(West 2010).  She had no legal duty to
inform Priebe of her father’s death or to allow Priebe to visit her father at
the nursing home.  

Priebe testified that the letter notifying her that the
police had been contacted and threatening to press charges if she attempted to
enter her home added “insult to injury,” but she also testified that when she
received the letter she “didn’t think twice about it,” and that “[i]t wasn’t
relevant to [her].”  Even if A’Hearn knew
that communicating with the police was likely to cause Priebe emotional
distress, neither A’Hearn’s communication with the police nor her act of
sending the letter to Priebe was extreme and outrageous.  See Kroger,
216 S.W.3d at 796 (holding that conduct was not extreme and outrageous where
defendant contacted police under mistaken belief that plaintiff had
shoplifted); see also Torres v. GSC Enters., 242 S.W.3d 553,
563 (Tex. App.—El Paso 2007, no pet.) (defendants reported possible crime to
law enforcement); Cox Tex. Newspapers,
L.P. v. Wootten, 59 S.W.3d 717, 724 (Tex. App.—Austin 2001, pet. denied)
(defendant published pictures of plaintiff’s deceased spouse); Gaspard v. Beadle, 36 S.W.3d 229, 237–38 (Tex. App.—Houston [1st Dist.] 2001,
pet. denied) (defendant broke up with client and billed her for legal work
performed during their relationship).  

To the extent that Priebe’s intentional infliction of
emotional distress claim was based on the same facts as her defamation claim,
we conclude that her claim was barred. 
To the extent that Priebe alleged independent facts supporting a claim
for intentional infliction of emotional distress, we conclude that the evidence
presented in this case did not support the jury’s finding that A’Hearn’s
behavior was extreme and outrageous, and we hold that her conduct did not
amount to an actionable intentional infliction of emotional distress
claim.  We overrule Priebe’s first issue.

 

 

 

 

Conclusion

We hold that the trial court
properly granted A’Hearn’s motions for directed verdict and for judgment
notwithstanding the verdict.  We affirm
the trial court’s judgment.  

 

                                                                   

Michael Massengale

                                                                   Justice


 

Panel
consists of Chief Justice Radack and Justices Alcala and Massengale.