Opinion issued November 6, 2008




 






In The

Court of Appeals

For The

First District of Texas

____________


NO. 01-07-00850-CV

____________


CHARLIE C. WILLIAMS, Appellant


V.


FREDDIE N. JACKSON, Appellee






On Appeal from County Civil Court at Law No. 4

Harris County, Texas

Trial Court Cause No. 844301





MEMORANDUM OPINION ON REHEARING



 Appellant, Charlie Williams, has filed a motion for rehearing of our opinion
issued on October 9, 2008. We deny rehearing, but withdraw our opinion and
judgment of October 9, 2008 and issue this opinion and a new judgment in their
stead. 

 This is suit to collect unpaid attorney's fees. Williams appeals from a
judgment that awarded appellee, Freddie N. Jackson, $8,446.76, plus interest and
costs, in accordance with jury findings that Williams did not comply with his
agreement to pay Jackson, that Williams's failure to pay was not excused by a
failure of Jackson to comply with a material obligation of the same agreement or
by duress by Jackson, and that $8,446.76 would fairly and reasonably compensate
Jackson for Williams's failure to pay. Williams's first issue challenges the
sufficiency of the evidence to support the jury's verdict. In four additional issues,
Williams contends that (1) Jackson created a conflict of interest by filing this
lawsuit and thereby breached the contract, (2) Jackson's alleged failure to bill
Williams monthly constituted an initial, material breach of the contract that
excused Williams's failure to pay, (3) Jackson is barred from recovering fees billed
for secretarial or paralegal work, and (4) Jackson's trial exhibits should have been
excluded based on Jackson's failure to respond to a discovery request. We affirm.

Background Williams and Jackson are both attorneys. This litigation derives from a
written agreement by which Williams retained Jackson to represent him in a real-property dispute that involved a cloud on property owned by Williams and
allegations that accused Williams of fraud and breach of fiduciary duty. On
August 13, 2004 the two men signed a fee agreement during that meeting. 
Williams paid Jackson the $4,000 retainer required by the agreement, which
recited Jackson's rate for legal services as $200 per hour and required that
Williams pay all costs. The fee agreement required Jackson to bill "monthly" and
Williams to pay "promptly." 

 Jackson prepared a no-evidence motion for summary judgment in the real-property dispute; he prevailed on that motion, recovered a judgment in January
2005, and successfully defended the opponent's motion for new trial. After the
opponent appealed, Jackson attempted to check out the record to prepare an
appellee's brief and learned only then Williams had checked out the record and
intended to handle the appeal pro se. Jackson stopped working on the appeal after
Williams "fired" him. 

 This litigation ensued as a suit on a sworn account when Williams refused to
pay the outstanding balance due Jackson. Jackson and Williams were the only
witnesses who testified at trial, and the fee agreement and Jackson's billing
statements were the only evidentiary exhibits. Williams filed a motion for
judgment notwithstanding the verdict (JNOV) and also filed a motion for new trial,
which was overruled by operation of law. 

Legal Sufficiency

 In his first issue, Williams argues that the evidence is legally insufficient to
support the jury's response to question three of the charge because the record
conclusively establishes (1) that he was under duress when he signed the fee
agreement with Jackson and (2) that he was therefore not bound by that agreement. 
Williams frames this issue as a challenge to the refusal of the trial court to grant
Williams's motion for JNOV. (1) 

A. Standard of Review

 A court may disregard a jury's verdict and render judgment notwithstanding
the verdict (JNOV) if no evidence supports the jury's findings, or if a directed
verdict would have been proper. Tiller v. McClure, 121 S.W.3d 709, 713 (Tex.
2003) (citing Brown v. Bank of Galveston, Nat'l Ass'n, 963 S.W.2d 511, 513 (Tex.
1998)); Williams v. Briscoe, 137 S.W.3d 120, 124 (Tex. App.--Houston [1st Dist.]
2004, no pet.). To determine whether a JNOV is appropriate, we apply the
standards that govern "no evidence," i.e., legal-sufficiency, review. See Wal-Mart
Stores, Inc. v. Miller, 102 S.W.3d 706, 709 (Tex. 2003); Williams, 137 S.W.3d at
124; see also City of Keller v. Wilson, 168 S.W.3d 802, 823 (Tex. 2005) ("[T]he
test for legal sufficiency should be the same for summary judgments, directed
verdicts, judgments notwithstanding the verdict, and appellate no-evidence
review."). 

 A legal sufficiency point must be sustained: (1) when there is a complete
absence of a vital fact; (2) when rules of law or evidence preclude according
weight to the only evidence offered to prove a vital fact; (3) when the evidence
offered to prove a vital fact is no more than a scintilla; or (4) when the evidence
conclusively establishes the opposite of the vital fact. See id., 168 S.W.3d at 810. 
Under the legal-sufficiency standard, we must credit evidence that supports the
judgment if reasonable jurors could, and we must disregard contrary evidence
unless reasonable jurors could not. See City of Keller, 168 S.W.3d at 827. If the
evidence falls within the zone of reasonable disagreement, we may not invade the
fact-finding role of the jurors, who alone determine the credibility of the witnesses,
the weight to give their testimony, and whether to accept or reject all or any part of
that testimony. See id. at 822. Unless "there is no favorable evidence" to support
the challenged finding or "if contrary evidence renders supporting evidence
incompetent . . . or conclusively establishes the opposite" of the finding, we must
affirm. See id. at 810-11.

B. Duress by Jackson not Shown

 Williams challenges the jury's failure to find, in response to question 3 of
the jury charge, that duress by Jackson invalidated their fee agreement. Coercion
or taking an unjust advantage by one party to a contract may invalidate the contract
and render it unenforceable. See Brown v. Cain Chem., Inc., 837 S.W.2d 239, 244
(Tex. App.--Houston [1st Dist.] 1992, writ denied). To establish economic duress
sufficient to invalidate a contract, three elements must be present: (1) a threat to do
something a party has no legal right to do, (2) an illegal exaction of some fraud or
deception, and (3) an imminent restraint that destroys the victim's free agency
without a present means for protection. Wright v. Sydow, 173 S.W.3d 534, 544
(Tex. App.--Houston [14th Dist.] 2004, pet. denied) (citing Dale v. Simon, 267
S.W. 467, 470 (Tex. Comm'n App. 1924)); Simpson v. MBank Dallas, N.A., 724
S.W.2d 101, 109 (Tex. App.--Dallas 1987, writ ref'd n.r.e.). Duress must derive
from acts or conduct of the party accused of duress; the emotions of the purported
victim do not suffice. See Brown, 837 S.W.2d at 244. Because "[t]he compulsion
must be actual and imminent, and not merely feigned or imagined," the acts of the
defendant must be "such as to destroy free agency without present means of
protection." Sudan v. Sudan, 145 S.W.3d 280, 292 (Tex. App.--Houston [14th
Dist.] 2004) (quoting Ward v. Scarborough, 236 S.W. 434, 437 (Tex. 1922)), rev'd
on other grounds, 199 S.W.3d 291 (Tex. 2006). 

 As in Brown, there is no evidence in this case that Jackson coerced or
threatened Williams and, thus, no evidence of the first element that Williams had
to prove in order to prevail on the affirmative defense. See Brown, 837 S.W.3d at
244. Williams also failed to show that the alleged coercion by Jackson was
imminent and effectively removed his freedom not to sign the fee agreement that
Jackson proposed. See Sudan, 199 S.W.3d at 292. Williams negated that element
by his own testimony that he signed the agreement "voluntarily." Though
Williams claims he was "distraught," and Jackson agreed that Williams was
distraught, the emotional state of the complaining party does not establish duress. 
See Brown, 837 S.W.2d at 244. 

 When viewed in the requisite light, which must favor the jury's verdict, the
evidence is legally insufficient to establish that Williams signed the fee agreement
only because of duress directed at him by Jackson. We overrule issue one. 

B. Williams's Failure to Pay Jackson Not Excused

 In issue three, Williams challenges the jury's failure to find, in response to
question two of the jury charge, that Jackson breached the fee agreement and thus
discharged Williams of his duty to pay Jackson. (2) According to Williams, the
record establishes that Jackson did not bill Williams monthly and therefore
establishes an initial breach that discharged Williams from any liability for failing
to pay Jackson as a matter of law. 

 Williams's arguments invoke the well-settled principle that a material breach
by one party to a contract can excuse the other party from any obligation to
perform. See Mustang Pipeline Co. v. Driver Pipeline Co., 134 S.W.3d 195, 196
(Tex. 2004) ("It is a fundamental principle of contract law that when one party to a
contract commits a material breach of that contract, the other party is discharged or
excused from further performance."). We construe Williams's point of error as
challenging the legal sufficiency of the evidence to support the jury's failure to
find that a breach of the fee agreement by Jackson discharged Williams's
obligation to pay. See City of Keller, 168 S.W.3d at 810 (stating that evidence may
be legally insufficient when rules of law or evidence preclude according weight to
only evidence offered to prove vital fact).

 Whether a party to a contract has breached the contract is generally a
question of law for the court, which determines as a matter of law what the contract
requires of the parties. See Meek v. Bishop Peterson & Sharp, P.C., 919 S.W.2d
805, 808 (Tex. App.--Houston [14th Dist.] 1996, writ denied). When the terms of
a contract are clear and unambiguous, and the facts concerning breach or
performance are undisputed or conclusively established, the trial court decides, as a
matter of law, whether the facts show performance or breach. See id. Resolution
by the fact-finder is appropriate to resolve underlying factual disputes that pertain
to the alleged breach, but not the breach itself. See id. 

 Materiality of a breach--the question whether a party's breach of a contract
will render the contract unenforceable--generally presents a dispute for resolution
by the trier of fact. See Continental Dredging, Inc. v. De-Kaizered, Inc., 120
S.W.3d 380, 394-95 (Tex. App.--Texarkana 2003, pet. denied) (citing Hudson v.
Wakefield, 645 S.W.2d 427, 430 (Tex. 1983)). Materiality of a breach and the
resulting unenforceability of the agreement breach can, however, present questions
for the court to resolve as a matter of law. See Mustang Pipeline Co., 134 S.W.3d
at 198-200 (holding that material breach occurred as matter of law, given that
contract stated that "'all time limits . . . are of the essence"; further holding that
breach discharged Mustang from further performance). 

 In Mustang Pipeline, the supreme court relied on two provisions of the
Restatement of Contracts relating to materiality of a breach of contract. See id.
(citing Restatement (Second) of Contracts §§ 241-242 (1981)). Section 241 of the
Restatement lists five "circumstances" that are "significant in determining when a
failure to perform is material," and section 242 lists two additional factors that are
"significant in determining whether a party's duties are discharged . . . due to the
other party's material breach." Id. (Emphases added.) 

 Pertinent to this case, in which Williams challenges the jury's failure to find
that he was discharged from his duty to pay Jackson, section 242 of the
Restatement (Second) of Contracts addresses the implications of time deadlines
stated in a contract for deciding whether alleged breach of a deadline by the party
seeking enforcement of a contract--here Jackson, who did not bill Williams
monthly--will discharge the other party to the contract--here, Williams--of any
duty to comply with the contract. See id. Pursuant to subsection (2) of section
242 of the Restatement, "the extent to which the agreement provides for
performance without delay" is a circumstance that affects materiality of lack of
timely performance. Mustang Pipeline Co., 134 S.W.3d at 199 (citing Restatement
(Second) of Contracts § 242). More specifically, and pertinent to the controversy
here, section 242(2) further states that 

 [A] material failure to perform or to offer to perform on a stated day
does not of itself discharge the other party's remaining duties unless
the circumstances, including the language of the agreement, indicate
that performance or an offer to perform by that day is important.


Id. (Emphasis added.) 

 The record establishes that Jackson described his billing requirement at trial
as a monthly obligation, and the fee agreement required that he "bill [Williams]
promptly," which then required Williams to "pay . . . promptly." In contrast to the
Mustang Pipeline contract, the Jackson-Williams fee agreement does not impose a
duty of compliance on either a stated day or without delay. See Mustang Pipeline
Co.134 S.W.3d at 199. Likewise, nothing in the fee agreement suggests that the
requirement of "monthly" billing is of the essence, to the extent that it serves as a
predicate to compliance by Williams with his duty to pay Jackson. See id. The fee
agreement provides no basis, therefore, to support Williams's contention that
Jackson's lack of compliance, if any, with his duty of "monthly" billing discharged
Williams as a matter of law from any duty to comply with the fee agreement by
paying Jackson. See id. (citing Restatement (Second) of Contracts § 242(2)). 

 We overrule issue three. 

Breach of Contract Defenses

 In issues two and four, Williams challenges and raises defenses to
enforcement of the fee agreement against him, as follows: in issue two, he claims
that a conflict of interest barred Jackson from initiating this lawsuit; in issue four,
Williams argues that Jackson's work included billing entries for clerical or
secretarial duties, for which Williams contends he had no duty to compensate
Jackson, and, in addition, that Jackson's fees were unreasonable. 

 A trial court "shall submit the questions, instructions[,] and definitions" that
"are raised by the written pleadings and the evidence." Tex. R. Civ. P. 278. 
Williams raised the issues addressed in his second and fourth issues as affirmative
defenses to Jackson's suit to enforce their fee agreement as a sworn account. To
the extent that the evidence raised those issues, Williams was entitled to a jury's
determination of any factual disputes regarding those issues. See id. We need not
address whether the evidence raised material issues of fact for the jury to decide
regarding these issues in this case, however, because Williams did not request that
the trial court include either questions or instructions regarding the issues as part of
the jury charge. 

 A party waives "all independent grounds of recovery or of defense" when
that party does not submit its claim of recovery or defense to the jury or request
that the jury determine any element of its claim or defense, unless the evidence
"conclusively establishe[s]" the claim or defense. See Tex. R. Civ. P. 279
(emphasis added). In this case, Williams did not propose that the jury determine
pertinent dates relating to Jackson's representation in support of his claim that a
conflict precluded this lawsuit. Likewise, Williams did not request that the trial
court instruct the jury that, in determining whether Williams failed to comply with
the fee agreement, in response to question one of the jury charge, the jury exclude
from its consideration any work that Williams challenged as "secretarial" and any
fees that Williams challenged as "unreasonable." The evidence does not
conclusively establish either defense, and Williams does not contend otherwise. 
See id. Accordingly, Williams waived jury consideration of those issues. See id. (3)

 We overrule issues two and four. 

Admissibility of Jackson's Trial Exhibits


 In his fifth issue, Williams argues that the trial court erred by admitting
Jackson's two trial exhibits into evidence because of pretrial discovery violations
by Jackson. Jackson's two exhibits are the fee agreement and his billing invoices. 
Williams has waived any challenge to either exhibit because the record reflects that
his counsel confirmed on the record that both exhibits were to be admitted without
objection. See Tex. R. App. P. 33.1 (a); see also Tex. R. Evid. 103(a)(1) (stating
requirement of objection); In re C.O.S.S., 988 S.W.2d 760, 765 (Tex. 1999)
(quoting Pirtle v. Gregory, 629 S.W.2d 919, 920 (Tex. 1982)). 

 We overrule issue five.

Conclusion


 We affirm the judgment of the trial court.



 



 Sherry Radack


 Chief Justice


Panel consists of Chief Justice Radack and Justices Nuchia and Higley.



 
1. To preserve a complaint for review on appeal, a party must present to the trial court
a timely request, motion, or objection that states the specific grounds for the ruling
requested and conforms to the requirements of the Rules of Procedure and Evidence. 
See Wal-Mart Stores, Inc. v. McKenzie, 997 S.W.2d 278, 280 (Tex. 1999); Tex. R.
App. P. 33.1(a)(1)(A)-(B). The complaining party must also show that the trial court
ruled on the request, objection, or motion "either expressly or impliedly." Tex. R.
App. P. 33.1(a)(2)(A). 

 Williams filed his motion for JNOV on June 25, 2007, two days before the trial
court signed the judgment in favor of Jackson. As supplemented pursuant to this
Court's notice, the record on appeal shows that the trial court never ruled on
Williams's motion for JNOV. 

 In Chilkewitz v. Hyson, as here, the trial court signed a judgment in favor of the
prevailing party after the complaining party sought to set aside a jury's verdict by
filing a motion for JNOV. 22 S.W.3d 825, 828 (Tex. 1999). The supreme court
stated that the trial court had impliedly overruled the complaining party's motion for
JNOV by rendering judgment in favor of the prevailing party. Id. Under the
Chilkewitz reasoning, we may infer from the judgment rendered in favor of Jackson
in this case on June 27, 2007 that the trial court implicitly overruled Willams's motion
for JNOV. See id. We therefore hold that Williams preserved his challenge to the
trial court's failure to grant that motion and thus complied with rule 33.1(a)(2). 
2. Question two of the jury charge asked whether Williams's "failure to comply with the
agreement [was] excused" and instructed the jurors that "Failure to comply by
[Williams] is excused by [Jackson's] previous failure to comply with a material
obligation of the same agreement." The jury answered "No." Williams's contentions
do not include a challenge to the jury's implied finding that any breach by Jackson
was not a material breach.
3. We note further that Williams did not raise any issue regarding Jackson's alleged
conflict of interest in the trial court in order that the trial court resolve that issue as a
matter of law.